FILED
JEANNE A. NAUGHTON, CLERK

DEC - 6 2018

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In Re: | Case No.: | 16-18407-ABA |
|---|---|---|
| Christina M. Redington, | Chapter: | 13 |
| Debtor. | Judge: | Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before the court is reconsideration of an Application for Compensation (Doc. 40) ("Fee Application") filed by Jenny R. Ms. Kasen (hereinafter "Ms. Kasen"), who is counsel to the Chapter 13 Debtor, Christina M. Redington (hereinafter the "Debtor"). The court previously reduced Ms. Kasen's fee request[1] without properly affording Ms. Kasen the opportunity to respond to the court's concerns. The opportunity now having been provided, for the reasons that follow, the court finds that Ms. Kasen has not met her burden of proof that the sum of the fees Ms. Kasen charged were reasonable, necessary, and/or reasonably likely to benefit the estate at the time rendered, 11 U.S.C. §§ 329 and/or 330, and therefore, Ms. Kasen's request for fees will remain reduced at $6,500.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes the court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

Ms. Kasen filed the Fee Application for legal services rendered from September 3, 2015 to July 13, 2017 for a total of $8,524.70, $8,067.50 of which was for legal fees (the "Fees"). On August 25, 2017, the court entered an order, *inter alia*, reducing the Fees to $6,500 (Ms. Kasen's expenses were allowed in full) (Doc. No. 45). On August 31, 2017, Ms. Kasen submitted a *Request for an Opinion and an Opportunity to Supplement and a Hearing* to the court (Doc. No. 48). The court granted Ms. Kasen's request for a hearing, treating the hearing as a Motion for Reconsideration. (Doc. No. 49). On September 28, 2017, the hearing was held ("9/28 Hearing") and the court raised its concerns. On September 29, 2017, an order was entered denying Ms.

---

[1] The court previously allowed Ms. Kasen's request for expenses of $457.20 in full. The expenses are not subject to this decision.

Kasen's request. (Doc. No. 56). On October 10, 2017, Ms. Kasen appealed the court's order (Doc. No. 58). On June 19, 2018, the District Court reversed and remanded the court's order finding that the court should have given Ms. Kasen an opportunity to be heard on its objections to her Fee Application. (Doc. No. 70). As a result of the District Court's ruling, on June 25, 2018, the court entered an order laying out its concerns in regard to Ms. Kasen's Fee Application, provided Ms. Kasen with the opportunity to file a response, and set a hearing date for August 14, 2018 (Doc. No. 71) (the "6/25 Order"). On July 30, 2018, Ms. Kasen filed her *Certification in Support of Kasen &. Kasen's First Interim Application for Compensation and Reimbursement of Expenses Pursuant to Fed. Bankr. R. 2016, D.N.J. LBR 2016-5 and 2016-1* (Doc. No. 73) [hereinafter Certification]. A hearing was held on August 14, 2018 ("8/14 Hearing"). At the 8/14 Hearing, Ms. Kasen advised the court that she desired to rest on her papers. Nevertheless, a dialogue took place so that the court could better understand Ms. Kasen's responses to the court's concerns.

## FINDINGS OF FACT

In response to the District Court's ruling, the court entered the 6/25 Order in which it enumerated its concerns with Ms. Kasen's Fees. Specifically, the court asked for clarification on the following issues:

[1] How this case was a complicated case requiring fees in excess of the standard "no look" fee and the *Disclosure of Compensation of Attorney for Debtor(s)* pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b) (Form 2030) attached to the Debtor's Petition and signed by counsel;

[2] The ability to charge the bankruptcy estate for prepetition work;

[3] The reasonableness for charging the bankruptcy estate full hourly rate for administrative tasks;

[4] The basis for charging the bankruptcy estate to adjourn the confirmation hearing five times, especially in light of the continuing loss mitigation process and the court's written adjournment process and the *Disclosure of Compensation of Attorney for Debtor(s)* pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b) (Form 2030) attached to the Debtor's Petition and signed by counsel;

[5] The basis for charging the bankruptcy estate travel time at counsel's full hourly rate;

[6] The basis for charging the bankruptcy estate to file an Amended Schedule C in response to the trustee's objection to improperly claimed exemptions, when the objection was based on counsel's error;

[7] The basis for filing a Notice of Settlement of Controversy in connection with the loss mitigation process and charging the bankruptcy estate for something not provided for, required, or necessary; and

[8] The reasonableness of charging the bankruptcy estate in excess of $2,500[2] for loss mitigation given that most firms who appear before the court routinely charge from $1,700 to $2,250 (with some firms even capping their fees at $1,500).[3]

6/25 Order.[4]

In response to the 6/25 Order, Ms. Kasen submitted the Certification. First, the Certification summarized all the services rendered by Ms. Kasen. Next, the Certification explained the law firm's billing judgment in regard to travel time, filings, service of process, and written correspondence. Specifically, the Certification explained that the firm billed half the hourly rate for travel time, and with respect to the other services, the firm billed significantly less time than that which was actually spent in connection with the same. Ms. Kasen also argued that the requested fees were reasonable when applying the lodestar formula. Finally, Ms. Kasen reduced her Fees from $8,067.50 to $7,297.50 *but* this simply represented a reduction of $770 for improperly charged prepetition work that should not have been included in the Fees in the first place.

The Certification did not squarely address all of the items raised in the 6/25 Order. At the 8/14 Hearing, Ms. Kasen was afforded the opportunity to respond to the concerns the court had with her Fees. At the hearing, Ms. Kasen stated that she wished to solely rely on her papers submitted in response to the 6/25 Order but indicated that she was prepared to answer any questions the court had. During the 8/14 Hearing, Ms. Kasen confirmed that her Fees were reduced only by removing pre-petition services from the Fee Application, nothing else.

When questioned on whether the case confirmation hearings were adjourned several times solely for the reason that the loss mitigation process was ongoing, Ms. Kasen responded affirmatively. When asked if there was any reason to appear other than to tell the trustee that loss mitigation was continuing Ms. Kasen responded, that she did not have an answer but that there were appearances at multiple confirmation hearings.

When questioned about issues not squarely addressed in the Certification, specifically, the issue of why this chapter 13 case was a complicated case requiring fees in excess of the standard loan modification or confirmation process, Ms. Kasen referenced her Certification in identifying "a-typical" complexities in the loan modification process. Ms. Kasen confirmed however, that the original chapter 13 plan was a simple plan and that the plan modification was simply to reflect the loan modification.

When questioned about the basis for charging the bankruptcy estate to file an Amended Schedule C in response to the trustee's proper objection to improperly claimed exemptions, Ms.

---

[2] This is the cap the court looks to in granting fees that are in excess of the routine range of fees the court usually sees.

[3] During the 9/28 Hearing, the court provided multiple examples of cases confirming these routine charges and range. See amended transcript of the 9/28 Hearing (Doc. No. 63) ("9/28 Transcript").

[4] The court raised these issues during the 9/28 Hearing, see Doc. No. 61, so they were not unfamiliar to Ms. Kasen when the 6/25 Order was issued.

Kasen was unable to satisfactorily respond and noted that it was only a minimal charge to the estate.

Finally, the court asked Ms. Kasen the basis for charging for adjournments to confirmation in light of the *Disclosure of Compensation of Attorney for Debtor(s)* form signed by her and filed with the court pursuant to Bankruptcy Code Section 329(a) and Federal Rule of Bankruptcy Procedure 2016(b) (Doc. No. 1, p. 42) (the "2016(b) Statement") which specifically stated that in exchange for compensation of $3,500, Ms. Kasen agreed to "preparation, filing, of any petition, schedules, statements of financial affairs, and plan which may be required; *representation* of the Debtor *at* meetings with creditors and *confirmation hearings, and any adjourned hearings thereof*; and all other contested matters." *id.*, Ms. Kasen responded that the form was a mistake and inconsistent with her separate fee agreement between the Debtor and her firm.[5]

### Other Relevant Facts

The Debtor filed her chapter 13 bankruptcy case on April 29, 2016. The Debtor's chapter 13 plan, filed on the first day of the case, was a simple plan that provided for monthly payments of $1,150.76 for 60 months. With regard to the secured obligation, the Debtor's plan proposed a curing of the prepetition default, and that "*Debtor seeks to obtain a mortgage loan modification through the Court's loss mitigation program.*" (Doc. No. 2). It was not a complicated plan and is certainly consistent with chapter 13 plans routinely filed before this court. There were no objections to the proposed plan and in fact, no significant creditor activity in the case at all.

In connection with the filing of the Debtor's petition, Ms. Kasen filed the Debtor's Schedule C: *The Property You Claim as Exempt*. The Chapter 13 Trustee filed an Objection to Debtor's Claim of Exemptions. (Doc. No. 11). The basis of the objection was due to the Debtor's improper use/calculation of the exemptions provided for under 11 U.S.C. § 522(d). In effect, the Debtor was seeking to exempt more than she was entitled to under section 522(d). In response, Ms. Kasen filed an Amended Schedule C, correcting the mistake. (Doc. No. 12). Her Fee Application reflects that Ms. Kasen charged the Debtor for the work related to the Amendment, specifically: "reviewed and saved chapter 13 trustee's objection to claim of exemptions," "prepared amended schedule C," and "filed amended schedule C." (Certification at 16). This additional work combined to 0.2 hours of work at $350/hour for the work done to amend the Schedule C, totaling $70. *Id.*

Finally, Ms. Kasen's Fee Application seeks compensation for appearances at five separate confirmation hearings that totaled $1,662.50[6] in fees—$1,050.00 in attending the five hearings and $612.5 in travel time. At the time Ms. Kasen filed her Fee Application, the New Jersey Bankruptcy Court's district-wide standard fee for adjourned matters was $100 per adjournment, not to exceed three, i.e., $300 total. *See* former D.NJ. LBR 2016-5 and its corresponding form.

---

[5] Recently, the bankruptcy court in New Jersey addressed the inconsistencies between Ms. Kasen's 2016(b) Statement and her separate fee agreement in another case and determined that it could cap her fees at the amount set forth in the 2016(b) Statement. *In re Busillo*, No. 15-15627 (JNP), 2018 WL 6131767 (Bankr. D.N.J. Oct. 29, 2018). This court agrees with the *Busillo* court but declines to take that drastic step with regard to the Fees in this case.

[6] Again, this is inconsistent with her 2016(b) Statement.

With regard to her appearances at the hearings that were adjourned, Ms. Kasen did not persuade the court that appearance at the hearings was necessary. Ms. Kasen did not explain why she did not simply use the district's long-standing adjournment process—seeking an adjournment through a written request or phone call—in lieu of an actual appearance.

The court's docket reflects, and this court's experience confirms, that this case was not a complicated or complex case. This was a simple chapter 13 plan that envisioned a loan modification—routine in a chapter 13 case. Ms. Kasen has not persuaded this court that this case was anything else.

## I. DISCUSSION

The bankruptcy court has an independent duty to review fee requests of all professionals retained in a case to assure that the services rendered were necessary and appropriate and that the fees requested were reasonable. *See, e.g., In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994); *In re McDermott*, No. 05–17387(DHS), 2009 WL 2905375, at *6 (Bankr. D.N.J. Aug. 24, 2009). The court "must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Busy Beaver*, 19 F.3d. at 844.

Under 11 U.S.C. §§ 329 and/or 330, the court may award reasonable compensation for services rendered by the attorney based on the factors listed under section 330(a)(3), including: the nature, the extent, and the value of the services; the time spent on the services; the rates charged for such services; and whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case. *Id. See also* Busy Beaver, 19 F.3d at 840. However, "[t]he court [should] not allow compensation for (i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). In a chapter 13 case, "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B).

The applicant bears the burden of proving that the fees and expenses sought were reasonable and necessary. *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 261 (3d Cir. 1995). "The court must conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Fleming Companies, Inc.*, 304 B.R. 85, 89–90 (Bankr. D. Del. 2003) (quoting *In re Cenargo Int'l, PLC*, 294 B.R. 571, 595 (Bankr. S.D.N.Y. 2003)). "A judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id.* (citing *Busy Beaver*, 19 F.3d at 854). "The court should then consider any evidence submitted with the application or at a hearing." *Id.* When making its consideration, the court is not required to make a line-by-line analysis of the fee application, and a sampling will suffice. *See In re Maruko Inc.*, 160 B.R. 633, 642, 645 (Bankr. S.D. Cal. 1993) (citing *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D.

Mass. 1992)); *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir. 1976). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d 833 at 845.

Based upon the court's experience with fee requests in these types of matters, the $7,297.50[7] in Fees requested by Ms. Kasen in this case are unacceptable in part and the court finds that Ms. Kasen failed to meet her burden of proof that a portion of her Fees were beneficial, reasonable, and/or necessary.

### A. Unnecessary and/or Unwarranted Charges

In her Certification, Ms. Kasen points to the lodestar formula and states that if a court finds attorneys' fees are warranted, it must calculate the amount of the award beginning with the lodestar formula—multiplying the number of hours reasonably expended by a reasonable hourly rate. What Ms. Kasen's Certification fails to address is that the court, in its 6/25 Order, took issue with some of the work Ms. Kasen performed and charged the Debtor for—specifically, the work was unnecessary or unwarranted, and thus the fees were not proper at all.

### 1. Charge Client for Attorney's Mistake

Exemptions are a legal issue and "are one of the most important issues for individual consumer bankruptcy debtors. All debtors' attorneys should be well-versed in the various choices debtors may have in selecting state or federal exemptions." *In re O'Brien*, 443 B.R. 117, 144 (Bankr. W.D. Mich. 2011). Certainly, when a client retains a bankruptcy attorney to help them file bankruptcy, it is the role of the attorney, using his or her expertise,[8] to claim exemptions for the client on the bankruptcy Schedule C. *See Matter of Boyer*, 7 B.R. 930, 932 (Bankr. D. Idaho 1981) ("The failure to claim exemptions in my experience is generally the result of negligence, mistake, or lack of knowledge of bankruptcy procedure by the debtor's attorney. The debtor himself should not be penalized for this.").

The court in *In re Bellows-Fairchild*, 322 B.R. 675, 680 (Bankr. D. Or. 2005), noted:

> "[O]ne of the most important duties of the debtor's attorney [is] preparing the debtor's schedules and statement of affairs." 4 Colliers [sic] on Bankruptcy, 15th Ed. ¶ 521.03[3] at page 521-8. Thus,

---

[7] Presumably in response to the 9/28 Hearing and the 6/25 Order, Ms. Kasen amended her original fee request for compensation to only include postpetition fees, thereby reducing her request to $7,297.50. The court initially awarded Ms. Kasen $6,500.00 in Fees. Thus, the amount of money at stake now is **$797.50**, representing the difference between Ms. Kasen's amended fee request and what the court initially allowed.

[8] Indeed, it can be argued that it is an attorney's express duty to determine what property is exempt. *O'Brien*, 443 B.R. 117, 144 (citing § 101(12A) and § 527(c)(3) of the Bankruptcy Code).

> "[i]n the preparation of the schedules nothing should be taken for granted. The attorney should carefully investigate the affairs of the debtor and make certain that the attorney has all the information needed to prepare full and complete schedules, for it is the duty of the debtor to present intelligible and true schedules. Although, depending on the sophistication of the debtor, it may be possible to have the debtor, especially a business debtor, prepare a first draft of the schedules, *the attorney for the debtor has a responsibility to review [the] schedules to ensure that they are complete and in compliance with the Code and the Federal Rules of Bankruptcy Procedure.*"
>
> 4 Colliers [sic] on Bankruptcy, 15th Ed. ¶ 521.03[3], page 521-10. (Emphasis added).

322 B.R. at 680. In the original Schedule C filed by Ms. Kasen on behalf of the Debtor, she claimed more in exemptions than what the Bankruptcy Code allows. But for Ms. Kasen's mistake, she would not have needed to file an amended Schedule C, and thus, the Debtor would not have been charged.

In *In re Yogi*, No. 13-01452, 2014 WL 3749553, at *1 (Bankr. D. Haw. July 29, 2014), the debtor's attorney was denied his application for compensation because, "but for the attorney's mistake . . . he would not have had to provide the additional services for which he now seeks compensation." *Id.* at *2. *See also In re Wheeler*, 439 B.R. 107, 110–11 (Bankr. E.D. Mich. 2010) (reasoning that "[c]ertainly, services performed to correct a mistake in a plan that should not have been made in the first place, or that should have been corrected before the plan was filed, are not 'necessary,' at least not in the sense that they were needed to provide proper representation to the debtors at every stage in the proceeding. In the alternative, if it is concluded that the services to correct the mistake were necessary, then it must also be concluded that the services undertaken to make the mistake were not 'necessary.'").

The mistake was not the fault of the Debtor. Ms. Kasen made the mistake for which the Debtor should not be charged. Ms. Kasen is a seasoned attorney and should have properly claimed exemptions. It was her responsibility to review the debtor's exemptions to ensure that they were compliant with the Bankruptcy Code. But for her mistake, she would not have charged the additional fees for the work done to amend the Schedule C. It does not matter that the fee charged was minimal. *It should never have been charged* because it was her mistake. Although given opportunities to persuade the court otherwise, Ms. Kasen failed to do so. The charge is not reasonable or necessary, and was not reasonably likely to benefit the estate at the time rendered, and, thus, cannot be allowed.

### 2. Multiple Appearances at Confirmation Hearings to Seek Adjournments

Ms. Kasen attended five confirmation hearings in person to request adjournments. Ms. Kasen charged the Debtor over $1,600 to attend these five hearings, including travel costs. *Id.*

In New Jersey, when a matter is not ripe for confirmation, especially when loss mitigation/loan modification is in process (as in this case), the standard is to seek an adjournment through a written adjournment request form (and sometimes even telephonically) and an adjournment is routinely granted. Even when an attorney seeks to forego the written adjournment request form when a case is not ready for confirmation and personally appear at the confirmation hearing, our court's supplemental fee process allows an attorney to charge $100 per adjournment — not to exceed three. This long-standing supplemental fee process was developed by the court after consultation with the Lawyers Advisory Committee. The $100 fee for adjournments was deemed to be a reasonable fee for adjournments. In light of the ability to obtain an adjournment by written request and the supplemental fee process that establishes $100 as a reasonable fee for each adjournment request, Ms. Kasen's fees for adjournment requests are unreasonable even when applying the lodestar formula. It appears that there was no reason to appear at the confirmation hearings because they would not be going forward until the loss mitigation/loan modification process completed. This makes the charges unnecessary.

Ms. Kasen was given notice that the court had objections to her charging so much for the confirmation hearings, when filing a form was a possible alternative, from both the 9/28 hearing and the 6/25 Order. However, Ms. Kasen did not address the issue in her Certification. Additionally, at the 8/14 Hearing, the court inquired into whether or not the confirmation hearings were adjourned several times solely for the reason that the loss mitigation/loan modification process was ongoing, and Ms. Kasen responded in the affirmative. However, when asked if there were any reasons to appear, other than to tell the trustee that the loss mitigation/loan modification process was continuing, Ms. Kasen responded, that she did not have an answer but that there were appearances at multiple confirmation hearings. Even after being made aware of the court's concerns on this issue, Ms. Kasen was unprepared to answer the question. Thus, although given opportunities to persuade the court otherwise, Ms. Kasen failed in her burden to persuade the court that the charges were reasonable, necessary, or reasonably likely to benefit the estate at the time rendered. A reduction of Ms. Kasen's fees to attend multiple confirmation hearings that had to be adjourned because the case was not ripe for confirmation is warranted.

### 3. Charging for a *Notice of Proposed Compromise or Settlement of Controversy*

Nowhere in the loss mitigation procedures is it required to prepare and file a *Notice of Proposed Compromise or Settlement of Controversy*, yet Ms. Kasen did and charged the Debtor for it. It is not necessary. Loan modifications are approved through motion and court order—not notices. The charge is not necessary, nor was it reasonably likely to benefit the estate at the time rendered. It is not reasonable to seek compensation for work that was not required. Although given opportunities to persuade the court that the charge was beneficial and necessary, Ms. Kasen failed to do so. The charges cannot be allowed.

### B. Administrative Tasks

In addition to the fees discussed above, that the court finds were unnecessary, the court afforded Ms. Kasen the opportunity to address its concerns about billing administrative tasks at an attorney's full hourly rate. The firm of Kasen & Kasen (Ms. Kasen's firm) was previously put on

notice in *In re Demarco*, No. BR 14-28245-ABA, 2016 WL 899915 (Bankr. D.N.J. Feb. 9, 2016), that administrative tasks that are routine, ministerial, secretarial, or paralegal in nature "should not be compensated at an attorney's hourly rate." *Id.* at *5. The court "always looks to reasonableness and operates by the guidelines that normal secretarial, paralegal, or junior attorney services should be compensated accordingly—for example, simple correspondence, including filing letters, scheduling of meetings, etc., preparation of basic documents such as notices of motion, subpoenas, etc., and routine document review—should be compensated at a lower hourly rate, if compensated at all." *In re McDermott*, No. 05-17387, 2009 WL 2905375, at *7 (Bankr. D.N.J. Aug. 24, 2009); *see also In re GSC Grp., Inc.*, No. 10-14653, 2012 WL 676409, at *7 (Bankr. S.D.N.Y. Feb. 29, 2012); *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643-44 (Bankr. D. Del. 2004); *In re Green River Coal Co., Inc.*, 163 B.R. 103, 104-05 (Bankr. W.D. Ky. 1994); *In re Auto. Warranty Corp.*, 138 B.R. 72, 78-79 (Bankr. D. Colo. 1991) (holding that tasks of a "purely non-legal nature, such as filing papers with the Court . . . 'should *not* be compensable at the hourly billing rate of an attorney when such ministerial and routine tasks can be performed by less-costly non-legal employees.'" (quoting *In re Paolino*, 71 B.R. 576, 582 n. 6 (Bankr. E.D. Pa. 1987)).

Ms. Kasen stated at the 9/28 Hearing that she did not have a paralegal. Additionally, in her Certification she justified these fees by stating that for filings, service of process, and written correspondence, the firm billed for significantly less time than what was actually spent on the services. This misses the point. It makes no difference if the work was done quickly, so that even though Ms. Kasen charged an hourly rate of $350/hour, the charge was minimal. The issue is charging at the highest hourly rates for administrative tasks. Those small increments of time at the highest billing rate add up. It is absurd that an attorney would charge his or her highest hourly rate to do administrative tasks such as filing pleadings. A simple task, even if it is done quickly, does not warrant a charge at the $350 per hour rate. It is not reasonable, and charging the rate is unnecessary. Thus, a reduction of Ms. Kasen's fees is warranted.

### C. Charge For Loss Mitigation/Loan Modification

Ms. Kasen was asked to explain the reasonableness of charging the bankruptcy estate in excess of $2,500 (the court's normal cap for routine cases) for loss mitigation/loan modification given that most firms that appear before the court routinely charge from $1,700 to $2,250 (with some firms even capping their fees at $1,500).[9] Ms. Kasen seek fees in the amount of $3,115 for loss mitigation.

In her Certification, Ms. Kasen argued that the usual calculation of proper attorneys' fees begins with the lodestar formula by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* at 9 (citing *Ullman v. Superior Court of Pa.*, 603 Fed. Appx. 77, 79-80 (3rd Cir. 2015) *and Boles v. Wal-Mart Stores, Inc.*, 650 Fed. Appx. 125, 129 (3rd Cir. 2016) ("Attorneys' fees and costs awards begin with a calculation of the 'lodestar' amount, which is determined by multiplying a reasonable rate by the number of hours reasonably expended on the litigation.")). Ms. Kasen noted that courts retain discretion to adjust the lodestar formula and may do so based on a variety of factors, including but not limited to:

---

[9] At the 9/28 Hearing, the court provided 10 example cases involving fee requests for loss mitigation/loan modification establishing this range. *See* 9/28 Transcript at 12-13.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by a client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Certification at 9 (citing *Staiano v. Cain* (In re Lan Assocs. XI, L.P.), 192 F.3d 109, 123 (3d Cir. 1999)). Ms. Kasen then applied each of the factors listed to her present case as an explanation for why a downward adjustment to the lodestar is inappropriate and her compensation request is reasonable. *Id.* at 10–13. Relevant to the 6/25 Order, Ms. Kasen explained that there were various complexities that arose during the loss mitigation process in this case. Certification at 10. Ms. Kasen explained that:

> . . . because the Debtor did not decide to apply for loss mitigation until after her meeting of creditors, a motion for loss mitigation was required, instead of the form Notice of Request for Loss Mitigation. Also, the Debtor's mortgage loan was service transferred from Carrington to Bayview immediately after the Debtor was approved for a trial period plan. And, as a result, Law Firm was required to expend significant time and labor to confirm that the trial period plan was going to be honored by the new servicer, Bayview. Additionally, after the Debtor successfully completed her trial period plan payments, Bayview then failed to send the Debtor a permanent loan modification offer. And, as a result, Law Firm was required to expend time and labor to obtain this paperwork. Finally, after the Debtor was approved for a permanent loan modification, Bayview then failed/refused to accept mortgage payments from the Debtor. And, as a result, Law Firm was required to expend significant time and labor to resolve this issue.
>
> Also, upon the Debtor's request, and prior to the service transfer, Law Firm spent significant time and labor requesting certain information from Carrington about the Debtor's homeowner's insurance policy and the funds being escrowed by Carrington.

Certification at 10. In the court's experience, nothing claimed by Ms. Kasen evidences that the loss mitigation/loan modification process was complex or extraordinary in this case preventing an adjustment of the lodestar formula. Ms. Kasen has failed to meet her burden to convince the court otherwise. Indeed, the court is unclear why there was a delay in the process requiring the filing of a motion, as the Debtor's original filed plan anticipated participation in the process, from the inception of the case. There were also no novel or difficult questions presented in this process. Loss mitigation/loan modification is a portal and form-driven process, so no extraordinary skills are required. The amount requested by Ms. Kasen far exceeds the customary fees (in some cases more than doubles) usually requested *and awarded* in these cases. There were no particular limitations or circumstances that made this process anything other than a routine process. Nothing stands out in this case that is markedly different from the hundreds of other loss mitigation/loan

modification cases the court has seen. The excessive fees requested by Ms. Kasen for loss mitigation/loan modification warrant a reduction because they are not reasonable, especially when applying the lodestar formula.

### D. Failure to Exercise Billing Judgment

Finally, a fee applicant's "'failure to exercise billing judgment, excessive use of office conferences[,] and unnecessary duplication of effort will result in the reduction of fees'" where, in "'sound discretion'" of bankruptcy court, such fees are unreasonable. *In re Maxine's, Inc.*, 304 B.R. 245, 249 (Bankr. D. Md. 2003) (quoting *In re Leonard Jed*, 118 B.R. 339, 347 (Bankr. D. Md. 1990)). "The exercise of billing judgment is the voluntary reduction of a fee by counsel to a private client for services either conferred a negligible benefit or were excessive." *Id.* at 249. "Such billing judgment is an absolute requirement of fee applications in bankruptcy." *Id.*

Here, Ms. Kasen failed to exercise billing judgment in her Fee Application. First, she improperly included charges for prepetition services that should never have been charged to the Debtor in this case. Only after the court took issue with it did Ms. Kasen adjust her Fees accordingly. Next, Ms. Kasen should not have charged the Debtor for mistakes she made or for items that were unnecessary. There were also charges (other than the prepetition work charges) in excess of the customary charges for the work done in this case and there was no attempt by Ms. Kasen, even after the court raised its concerns, to voluntarily reduce her Fees. Finally, there should have been no charge for work that was not required. The failure to exercise billing judgment further supports a reduction in the Fees.

### CONCLUSION

For the foregoing reasons, the court finds that Ms. Kasen has not met her burden of proof that the sum of the fees she charged were warranted, reasonable, necessary, and/or reasonably likely to benefit the estate at the time rendered as required under 11 U.S.C. §§ 329 and/or 330, and, therefore, Ms. Kasen's request for fees will remain reduced at $6,500. The court notes that, including Ms. Kasen's voluntary reduction for her fees improperly charged for her prepetition work, the net reduction in total Fees is $797.50 which the court, consistent with *Busy Beaver*, 19 F.3d at 833, and the lodestar formula, deems reasonable for the reasons set forth above.

The court reserves the right to further supplement its finding of facts and conclusions of law.

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: December 6, 2018